# IN THE SUPREME COURT OF IOWA

No. 22–1574

Submitted March 21, 2024—Filed May 24, 2024

**DARRIN P. MILLER,** individually, as executor of the **ESTATE OF MEREDITH R. MILLER,** and as parent, guardian, and next of friend of **S.M.M.,** a minor,

        Appellee,

vs.

**CATHOLIC HEALTH INITIATIVES-IOWA, CORP.** d/b/a **MERCYONE DES MOINES MEDICAL CENTER, WILLIAM NOWYSZ, JOSEPH LOSH, HIJINIO CARREON, NOAH PIROZZI, DANIELLE CHAMBERLAIN,** and **DARON DARMENING,**

        Appellants,

and

IOWA DEPARTMENT OF TRANSPORTATION, STATE OF IOWA, SNYDER & ASSOCIATES, INC., COMPANY, INC. (an unidentified corporation),

        Defendants.

---

Appeal from the Iowa District Court for Polk County, Joseph Seidlin, Judge.

Defendant medical providers bring interlocutory appeal from rulings denying their motion to dismiss and motion for summary judgment under Iowa Code section 147.140(6). **REVERSED AND REMANDED.**

Waterman, J., delivered the opinion of the court in which all justices joined.

Theodore T. Appel (argued) and Frederick T. Harris of Lamson Dugan & Murray LLP, West Des Moines, for appellants Catholic Health Initiatives, Losh, Pirozzi, Chamberlain and Darmening.

Thomas F. Ochs (argued) and Richard A. Stefani of Gray, Stefani & Mitvalsky, PLC, Cedar Rapids, for appellants Nowysz and Carreon.

Jenna L. Cruise (argued) and Joshua L. Dewald of Hupy and Abraham, S.C. P.C., West Des Moines, and Marc S. Harding of Harding Law Office, Des Moines, for appellee.

Jessica A. Zupp of Zupp and Zupp Law Firm, P.C., Denison, for amicus curiae Iowa Association for Justice.

**WATERMAN, Justice.**

Does an unsworn signature on an expert's certificate of merit substantially comply with the statute requiring an affidavit signed under oath? In this appeal, we must decide whether the district court erred by denying dispositive motions filed by defendants in this medical malpractice action pursuant to Iowa Code section 147.140(6) (2021). This statute, entitled "Expert witness—certificate of merit affidavit," requires the plaintiff to serve a certificate of merit affidavit signed under oath by an expert qualified under section 147.139 within sixty days of the defendants' answer. The plaintiff, within that deadline, served a certificate of merit in the form of a report letter with the expert's unsworn signature. The defendants sought dismissal on two grounds: (1) the unsworn, signed letter did not comply with section 147.140's affidavit requirement, and (2) the expert, an anesthesiologist, was unqualified to testify against the defendant surgeons or respiratory therapist because the expert was not licensed to practice in the same or substantially similar field as required under section 140.139. More than ninety days after the statutory deadline, the plaintiff served the expert's sworn declaration and argued substantial compliance. The district court ruled that the expert's original unsworn but signed letter substantially complied with the affidavit requirement and that the expert's qualifications satisfied section 147.139. We granted the defendants' applications for interlocutory appeal and retained the case.

After the district court's rulings, we held in *Estate of Fahrmann v. ABCM Co.*, 999 N.W.2d 283, 288 (Iowa 2023), that a lawyer's signature on initial disclosures did not substantially comply with section 147.140's requirement for an expert's sworn signature. We also held that the certificate of merit signed under oath by the expert forty-two days after the statutory deadline did not cure the violation and that the defendant need not show prejudice. *Id.* at 288–89.

Applying that precedent, we now hold that the expert's signed but unsworn report did not substantially comply with section 147.140's affidavit requirement, and this violation was not cured by the expert's sworn declaration served over three months after the statutory deadline. *See id.* A contrary holding would undermine section 147.140 as well as untold other statutes and rules requiring timely sworn statements. We reverse the district court rulings and remand for dismissal of the medical malpractice claims with prejudice. We do not reach the question of whether the expert anesthesiologist was qualified under section 147.139 to testify against these defendants.

## I. Background Facts and Proceedings.

According to the plaintiff's petition, on December 15, 2019, Meredith Miller was a passenger in a car driven by her daughter southbound on a snow-covered Interstate 35 in Polk County. Her daughter lost control of the car, which slid off the highway and collided with a tree. Meredith sustained head injuries. The Ankeny Fire Department responded within minutes. The paramedics at the scene determined that Meredith needed help breathing and placed a supraglottic device into her throat to maintain an open airway. The paramedics transported Meredith by ambulance to MercyOne Des Moines Medical Center. Her blood oxygen level remained stable throughout the transport.

At MercyOne, Meredith was treated by emergency room physicians Dr. William Nowysz and Dr. Hijinio Carreon, trauma surgeon Dr. Joseph Losh, general surgeons Dr. Noah Pirozzi and Dr. Danielle Chamberlain, and respiratory therapist Daron Darmening. The physicians decided that the original airway device placed by the paramedics should be replaced with a different one: an oral endotracheal tube. But instead of placing the tube in the trachea, the tube was placed in Meredith's esophagus. Her oxygen levels plummeted, and she died within fifteen minutes. The Polk County Medical Examiner's Autopsy report

identified the cause of death as a traumatic brain injury with esophageal intubation as a contributing cause.

On October 28, 2021, Meredith's surviving husband Darrin Miller—individually, as executor of Meredith's estate, and on behalf of their daughter as her parent and guardian—sued the Iowa Department of Transportation and the State of Iowa for negligent failure to remove the tree next to Interstate 35 and alleged medical malpractice claims against Catholic Health Initiatives (MercyOne Des Moines Medical Center) and the treating physicians and nurses.[1] Miller alleged that the medical providers "were negligent by breaching the standard of care" by "negligently performing an esophageal intubation," "negligently failing to identify that the esophageal intubation was performed instead of a tracheal intubation," "negligently failing to correct the esophageal intubation," "knowingly being aware of the esophageal intubation" and "not being forthcoming about the cause of [Meredith's] death," and "knowingly performing other attempts at tracheal intubation after [Meredith] was pronounced dead in an effort to cover up the esophageal intubation."

Dr. Nowysz and Dr. Carreon filed their answer to Miller's petition on December 23, starting the sixty-day clock under Iowa Code section 147.140 for Miller to serve these defendants with certificate of merit affidavits by February 21, 2022. Catholic Health Initiatives, Dr. Losh, Dr. Pirozzi, Dr. Chamberlain, and respiratory therapist Darmening filed their answer on January 3, triggering a March 4 statutory deadline for Miller's certificate of merit for those defendants.

Miller retained two experts to testify about the standard of care and breach: Dr. Lynette Mark and Dr. Mustapha Saheed. Dr. Mark is a

---

[1]Miller subsequently dismissed the nurses and the State defendants.

board-certified anesthesiologist at Johns Hopkins Hospital, the Director of the Difficult Airway Response Team, and a Professor of Anesthesiology and Critical Care Medicine at Johns Hopkins University School of Medicine. Dr. Saheed is a board-certified emergency medicine physician at Johns Hopkins Medical Center.

On February 21, Miller, by email, served both sets of defendants a document entitled "Service of Certificate of Merit and Notice of Same," attaching Dr. Mark's "Expert Report of Findings and Opinions" and her curriculum vitae, outlining her qualifications. The report included her factual findings and her expert opinion that the treatment of the decedent by all medical provider defendants fell below the appropriate standard of care. The report was signed by Dr. Mark on Johns Hopkins Medicine letterhead, but it did not include an affidavit, sworn oath, or any declaration that she signed under penalty of perjury.

Miller never served any certificate of merit from Dr. Saheed. Miller did not ask defense counsel to agree to an extension of the sixty-day statutory deadline for certificates of merit, nor did Miller file a motion with the court to extend the deadline.

On May 12, Catholic Health Initiatives, Dr. Joseph Losh, Dr. Noah Pirozzi, Dr. Danielle Chamberlain, and Daron Darmening filed a motion to dismiss pursuant to Iowa Code section 147.140(6). The same day, Dr. Nowysz and Dr. Carreon moved for summary judgment. Both motions argued that Dr. Mark's certificate of merit affidavit did not comply with sections 147.139 and 147.140 for two reasons: (1) Dr. Mark's expert letter was not signed under oath, and (2) Dr. Mark did not qualify under section 147.139 to testify about the standard of care because "Dr. Mark is not licensed to practice in the same or substantially similar field" as the medical provider defendants. Both motions sought dismissal of the petition with prejudice.

Miller resisted both motions. He argued that Dr. Mark's February 20 letter substantially complies with Iowa Code section 147.140 because it contains her handwritten signature, curriculum vitae, and opinions "in anticipation of litigation, with the understanding that her testimony in this regard would be presented to the court under oath." Miller argued that Dr. Mark is qualified under section 147.139 because her extensive qualifications regarding airway management relate directly to the alleged negligence of the defendants.

On June 2, Miller served a document captioned "Affidavit of Dr. Lynette Mark," which she signed as "affiant" and dated that day. No notary signed the document. The document stated in full:

> I, Dr. Lynette Mark, M.D., certify, under penalty of perjury and pursuant to the laws of the State of Iowa, that the following is true and correct.
>
> In December of 2021, I was retained by Counsel for Plaintiffs to provide a qualified expert opinion with regard to the professional negligence claims in the above-captioned case. I provided my expert opinion in this regard to Counsel for Plaintiffs in a letter dated February 20, 2022. I, Dr. Lynette Mark, M.D., certify, under penalty of perjury and pursuant to the laws of the State of Iowa, that the expert opinion letter dated February 20, 2022, which I produced to Counsel for the Plaintiffs, was true and correct, and all opinions made therein were made within a reasonable degree of medical certainty.

This filing came three weeks after the defendants filed their dispositive motions—105 days after the statutory deadline for filing the certificate of merits for defendants Dr. Nowysz and Dr. Carreon, and 94 days after the deadline as to the remaining defendants.

The district court denied each motion in separate but nearly identical rulings. First, the district court found that although Dr. Mark did not sign her letter under oath, it substantially complied with section 147.140. The court reasoned that the letter "was provided early in the litigation," "it clearly identified

Miller's expert and qualifications," and "it set forth in the expert's own words all of the information required" in the statute. Second, the district court found that Dr. Mark's qualifications are in "the same or a substantially similar field" as the defendants, namely "airway management." *See* Iowa Code § 147.139(1). The district court determined that because section 147.139 requires the expert to testify about the applicable standard of care, the requisite " 'field' . . . then, is that which establishes the standard of care." Thus, the district court found that Dr. Mark is qualified to opine on the intubation procedure at issue. The court did not address whether Dr. Mark's June 2 sworn declaration substantially complied with the sixty-day deadline.

The defendants applied for interlocutory review. We granted their application and retained the case.

**II. Standard of Review.**

"We review rulings on motions to dismiss under Iowa Code section 147.140(6) and the district court's statutory construction for correction of errors at law." *Est. of Fahrmann*, 999 N.W.2d at 286.

"We review summary judgment motions for correction of errors at law." *Kirlin v. Monaster*, 984 N.W.2d 412, 415 (Iowa 2023). "Because this appeal turns on the district court's application of section 147.140, . . . 'we need only decide whether the district court properly applied the law.' " *Id.* (quoting *Hill v. State, Dep't of Hum. Servs.*, 493 N.W.2d 803, 805 (Iowa 1992)).

**III. Analysis.**

We must decide whether the defendants are entitled to a dismissal with prejudice because the February 20 letter was not signed under oath by Dr. Mark within the sixty-day statutory deadline as required under Iowa Code section 147.140. Miller argues, and the district court ruled, that Dr. Mark's unsworn signature substantially complied with the statute. Alternatively, Miller

argues that Dr. Mark's sworn declaration served on June 2 cured any statutory violation.

We begin with the text of the statute. Iowa Code section 147.140 uses the term "affidavit" six times, including in the title of the enactment:

> 147.140. Expert witness--certificate of merit *affidavit*
>
> 1. *a.* In any action for personal injury or wrongful death against a health care provider based upon the alleged negligence in the practice of that profession or occupation or in patient care, which includes a cause of action for which expert testimony is necessary to establish a prima facie case, the plaintiff shall, prior to the commencement of discovery in the case and within sixty days of the defendant's answer, serve upon the defendant a certificate of merit *affidavit* signed by an expert witness with respect to the issue of standard of care and an alleged breach of the standard of care. The expert witness must meet the qualifying standards of section 147.139.
>
> *b.* A certificate of merit *affidavit* must be signed by the expert witness and certify the purpose for calling the expert witness by providing *under the oath* of the expert witness all of the following:
>
> (1) The expert witness's statement of familiarity with the applicable standard of care.
>
> (2) The expert witness's statement that the standard of care was breached by the health care provider named in the petition.
>
> *c.* A plaintiff shall serve a separate certificate of merit *affidavit* on each defendant named in the petition.
>
> 2. An expert witness's certificate of merit *affidavit* does not preclude additional discovery and supplementation of the expert witness's opinions in accordance with the rules of civil procedure.
>
> 3. The parties shall comply with the requirements of section 668.11 and all other applicable law governing certification and disclosure of expert witnesses.
>
> 4. The parties by agreement or the court for good cause shown and in response to a motion filed prior to the expiration of the time limits specified in subsection 1 may provide for extensions of the time limits. Good cause shall include but not be limited to the inability to timely obtain the plaintiff's medical records from health care providers when requested prior to filing the petition.

5. If the plaintiff is acting pro se, the plaintiff shall have the expert witness sign the certificate of merit *affidavit* or answers to interrogatories referred to in this section and the plaintiff shall be bound by those provisions as if represented by an attorney.

6. Failure to substantially comply with subsection 1 shall result, upon motion, in dismissal with prejudice of each cause of action as to which expert witness testimony is necessary to establish a prima facie case.

7. For purposes of this section, "health care provider" means the same as defined in section 147.136A.

(Emphases added.) We reiterate that section 147.140 "unambiguously requires that the expert witness personally sign the certificate of merit under oath within sixty days of the defendants' answer." *Est. of Fahrmann,* 999 N.W.2d at 287.[2] Dr. Mark's February 20 letter was not signed by her under oath. We hold that the letter did not comply with section 147.140(1)(*b*).

We next address whether Dr. Mark's letter with her unsworn signature *substantially* complied with the certificate of merit statute. *See* Iowa Code § 147.140(6) ("Failure to substantially comply with subsection 1 shall result, upon motion, in dismissal with prejudice . . . ."). "Substantial compliance means 'compliance in respect to essential matters necessary to assure the reasonable objectives of the statute.'" *Hummel v. Smith,* 999 N.W.2d 301, 309 (Iowa 2023) (quoting *McHugh v. Smith,* 966 N.W.2d 285, 288–89 (Iowa Ct. App. 2021)). In *Hummel v. Smith,* we held that the plaintiff did not substantially comply with the statutory requirement that the expert has a "license to practice" when the expert had retired with an inactive license. *Id.* at 309. In our view, requiring the expert

---

[2]The Iowa Association for Justice (IAJ) filed a brief as amici curiae arguing that the oath requirement in Iowa Code section 147.140 is void for vagueness. This argument was never raised below, and the district court did not rule on it. The IAJ's amicus brief "recognized that neither party expressly raised or briefed the issue of the void for vagueness doctrine." "[N]ormally we do not allow amici curiae to raise new issues," and the defendants have "not briefed the issue, so there is no adversarial briefing." *Planned Parenthood of the Heartland, Inc. v. Reynolds ex rel. State,* 975 N.W.2d 710, 745 (Iowa 2022). We do not reach this argument.

to sign under oath is necessary to ensure the reasonable objectives of section 147.140.

"We reiterate section 147.140's reasonable objective is to 'give[] the defending health professional a chance to arrest a baseless action early in the process if a qualified expert does not certify that the defendant breached the standard of care.'" *Est. of Fahrmann*, 999 N.W.2d at 287–88 (alteration in original) (quoting *Struck v. Mercy Health Servs.—Iowa Corp.*, 973 N.W.2d 533, 541 (Iowa 2022)). Put another way, the statute "enable[s] healthcare providers to quickly dismiss professional negligence claims that are not supported by the requisite expert testimony." *Struck*, 973 N.W.2d at 541. The expert's sworn oath is essential.

In *Estate of Fahrmann*, we approvingly cited *Tunia v. St. Francis Hospital*, 832 A.2d 936 (N.J. Super. Ct. App. Div. 2003), for the proposition that "counsel's signature did not substantially comply with section 147.140(1)'s requirement that the *expert* sign the certificate of merit affidavit under oath." *Est. of Fahrmann*, 999 N.W.2d at 288. In *Tunia*, the medical experts failed to sign their affidavits under oath as required by New Jersey's certificate of merit statute. 832 A.2d at 939. The appellate court looked at the general requirement that the report must be in the form of an affidavit. *Id.* The *Tunia* court defined an affidavit as a "declaration . . . written down and sworn to by the declarant before an officer authorized to administer oaths." *Id.* (omissions in original) (quoting *Affidavit, Black's Law Dictionary* (7th ed. 1999)). "[I]n order to make an affidavit, there must be present at the same time the officer, the affiant, and the paper, and there must be something done which amounts to the administration of an oath." *Id.* (quoting *In re Educ. Ass'n of Passaic, Inc.*, 284 A.2d 374, 381 (N.J. Super. Ct. App. Div. 1971)). In *Tunia*, neither expert "was placed under oath in connection with executing the documents," and "[t]he statements completed by

the notaries public [we]re in the form of acknowledgments, . . . rather than a jurat, evidencing that the notary placed the doctor under oath at the time the document was executed." *Id.* The *Tunia* court determined that "the failure to place a declarant under oath" is not "a mere 'technical' deficiency," rather "it goes to the very nature of what an affidavit is." *Id.* The court concluded that the experts' unsworn signatures did not substantially comply with the statute. *Id.* We reach the same conclusion today.[3]

The Iowa Code defines an affidavit as "a written declaration made under oath, without notice to the adverse party, before any person authorized to administer oaths within or without the state." Iowa Code § 622.85; *see also* 2A C.J.S. *Affidavits* § 1, at 245 (2023) (defining an "affidavit" as "a written declaration under oath sworn to before a person with authority under the law to administer oaths"). The oath ensures that the person "recognize[s] the obligation to be truthful" when making the statement. *State v. Carter*, 618 N.W.2d 374, 376 (Iowa 2000) (en banc). To determine compliance with the oath requirement, "we look to see if the oath or affirmation was accomplished in such a way that the person's conscience was bound." *Id.*

Another statute, Iowa Code section 622.1(2), allows a requirement for a sworn statement to be satisfied through the signer's self-attestation that she "certif[ies] under penalty of perjury and pursuant to the laws of the state of Iowa that the preceding is true and correct." The "under penalty of perjury" language must be included. *See Carter*, 618 N.W.2d at 378. "This is an important requirement because the 'under penalty of perjury' language, like the administration of an oath by an official, acts to bind the conscience of the person

---

[3]We have found substantial compliance was demonstrated when the affidavit had been signed and sworn but the notary "failed to attach his seal to his official signature." *Ames Evening Times v. Ames Wkly. Trib.*, 168 N.W. 106, 107 (Iowa 1918) (per curiam).

and emphasizes the obligation to be truthful." *Id.* Section 622.1's self-attestation provision does not help Miller because Dr. Mark's February 20 letter was not signed "under penalty of perjury." *See id.* at 375, 378 (holding that merely stating that information on Carter's application was "true and correct" without the phrase "under penalty of perjury" above her signature "fell far short of substantially complying with the language required by the [perjury] statute"). We hold that Dr. Mark's unsworn letter did not substantially comply with section 147.140. We are not at liberty to eliminate the requirement that the expert sign the certificate of merit under oath when the governing statute uses the term "affidavit" six times.

A contrary holding would undermine many Iowa statutes requiring sworn statements or verifications. If we held a signed but unsworn letter substantially complied with section 147.140's affidavit requirement, how could district courts enforce other statutes, such as Iowa Code section 598.13, requiring parties in marital dissolution cases to file financial affidavits? Would parties be more likely to omit assets or falsely state income if they could avoid signing under oath or penalty of perjury and thereby avoid criminal liability exposure? Miller cites no Iowa case holding an affidavit requirement was satisfied by a document that was not signed under oath or penalty of perjury.

The Iowa Court of Appeals rejected a substantial compliance argument in *In re Prop. Seized for Forfeiture from Foley*, No. 16–1676, 2017 WL 3525221 (Iowa Ct. App. Aug. 16, 2017). The defendant contested the forfeiture of cash seized from him after he eluded police officers. *Id.* at *1. Iowa Code section 809.13(4) required him to sign his answer to the in rem forfeiture complaint "under penalty of perjury," which he failed to do. *Id.* at *2 The *Foley* court quoted and applied our precedent:

> "This is an important requirement because the 'under penalty of perjury' language, like the administration of an oath by an official, acts to bind the conscience of the person and emphasizes the obligation to be truthful." *State v. Carter*, 618 N.W.2d 374, 378 (Iowa 2000). If Foley had included some language in his answer that indicated an effort at compliance with the penalty-of-perjury provision, we could evaluate whether such language substantially complied with the statutory requirement. But, without some language showing an effort at compliance with the 'under penalty of perjury' requirement, the answer is fundamentally flawed. If we were to accept Foley's answer without a signature under penalty of perjury, we would effectively exempt Foley from possible prosecution for perjury while claimants who comply with section 809A.13(4) would remain subject to possible prosecution for perjury.

*Id.* at \*2. This reasoning applies equally to section 147.140.

We do not question Dr. Mark's veracity. But we do not second guess the legislature's choice to require certificates of merit to be signed under oath. *See* Iowa Code § 147.140.1(1)(*b*). This requirement can help weed out weak cases early when experts are deterred by the risk of criminal penalties for perjury and decline to sign the requisite certificate under oath. As Maine's highest court recognized, "The oath provision in a statute is more than a mere technicality. Its function is both to make clear the significance of filing the document itself and to provide a basis for a perjury action upon proof of falsification." *Paradis v. Webber Hosp.*, 409 A.2d 672, 675 (Me. 1979), *superseded by statute on other grounds*, 1985 Me. Laws ch. 804, § 12 (codified at Me. Stat. tit. 24, § 2851–2859 (2012)), *as recognized in Frame v. Millinocket Reg'l Hosp.*, 82 A.3d 137, 145 & n.6 (Me. 2013).

Our analysis is supported by cases from other jurisdictions addressing certificate of merit statutes requiring medical experts to sign under oath. *See, e.g., Sood v. Smeigh*, 578 S.E.2d 158, 161 (Ga. Ct. App. 2003) ("However, this affidavit was not sworn to and executed in the presence of a notary public prior to filing the complaint, which rendered the affidavit fatally defective ab initio for absence of a notary public swearing the witness in person."); *Holmes v. Mich.*

*Cap. Med. Ctr.*, 620 N.W.2d 319, 324 (Mich. Ct. App. 2000) (per curiam) ("Because no indication exists that the doctor confirmed the document's contents by oath or affirmation before a person authorized to issue the oath or affirmation, the document does not qualify as a proper affidavit."); *Tschakert v. Fairview Health Servs.*, No. A10–611, 2011 WL 206149, at *3 (Minn. Ct. App. Jan. 25, 2011) ("Here, appellant submitted an unsworn letter signed by Dr. Lopez; as it was not sworn to by Dr. Lopez 'before an officer authorized to administer oaths,' the letter does not constitute an affidavit. . . . Thus, the district court properly rejected appellants' letter . . . because it was technically deficient." (citation omitted)); *MountainView Hosp., Inc. v. Eighth Jud. Dist. Ct.*, 273 P.3d 861, 866 (Nev. 2012) ("The acknowledgment does not contain any statement that Dr. McNamara 'swore to or affirmed that the statements in the document are true.' Thus, based upon the record, we cannot conclude that Dr. McNamara's opinion letter constitutes an affidavit." (citations omitted)); *Bride v. Trinity Hosp.*, 927 N.W.2d 416, 420 (N.D. 2019) ("Bride contends she substantially complied with the affidavit requirement . . . [but] the letter of a clear and unambiguous statute cannot be disregarded under the pretext of pursuing its spirit."). Miller cites no published on-point contrary authority.[4]

Finally, we address Miller's argument that Dr. Mark's subsequent report signed under penalty of perjury cured the violation of section 147.140. This argument is foreclosed by *Estate of Fahrmann*, where we held that a properly

---

[4]Miller cites only one unpublished certificate of merit decision, *Reid v. St. Barnabas Hospital*, which found substantial compliance when a pro se plaintiff ultimately replaced his unsworn expert report with "a signed certification from the expert placing his report under oath." 2010 WL 2090032, at *2–4 (N.J. Super. Ct. App. Div. May 26, 2010) (per curiam). The *Reid* court relied in part on the defendant hospital's lack of prejudice and the plaintiff's belatedly filed expert's sworn report. *Id.* at *3. *Reid* thereby conflicts with *Estate of Fahrmann*, where we held the defendant need not show prejudice and an untimely sworn report did not cure the violation. *See Est. of Fahrmann*, 999 N.W.2d at 288–89.

sworn certificate of merit affidavit served forty-two days after the statutory deadline did not cure the violation. *See* 999 N.W.2d at 287–88; *see also Morrow v. United States*, No. 21–cv–1003–MAR, 2021 WL 4347682, at *1, *5 (N.D. Iowa July 28, 2021) (holding certificate of merit filed sixteen days late did not substantially comply with section 147.140), *aff'd*, 47 F.4th 700, 704 (8th Cir. 2022). Dr. Mark's June report signed under penalty of perjury was served over *ninety* days after the statutory deadline. Miller could have filed a motion to extend that deadline for good cause shown within the original sixty-day deadline. *See* Iowa Code § 147.140(4). Miller failed to do so. Nor did Miller obtain an agreed-upon extension from the defendants.[5] *See id.* The defendants were not required to show prejudice by the delay. *See Est. of Fahrmann*, 999 N.W.2d at 287; *see also Morrow*, 47 F.4th at 705 (holding defendant need not show prejudice to obtain dismissal under section 147.140(6)). Under these circumstances, the defendants are entitled to an order dismissing Miller's medical malpractice action with prejudice. *See* Iowa Code § 147.140(6).

**IV. Disposition.**

For those reasons, we reverse the district court ruling that denied the defendants' dispositive motions, and we remand for an order dismissing this case with prejudice.

**REVERSED AND REMANDED.**

---

[5]We recently held that Iowa Rule of Civil Procedure 1.943 permits the plaintiff to voluntarily dismiss their petition *without* prejudice when faced with a motion to dismiss with prejudice under section 147.140; the plaintiff may then timely refile their petition later with a proper certificate of merit. *Ronnfeldt v. Shelby Cnty. Chris A. Myrtue Mem'l Hosp.*, 984 N.W.2d 418, 429 (Iowa 2023).